# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

ADENA HOPLITE,

      Plaintiff,

                          **Case No. 2:20-cv-3268**

    vs.                         **Judge Michael H. Watson**

                          **Magistrate Judge Elizabeth P. Deavers**

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Adena Hoplite, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 12), and the administrative record (ECF No. 6). Plaintiff did not file a Reply. For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## I.    BACKGROUND

On January 17, 2017, Plaintiff filed her application for disability insurance benefits and on March 20, 2017, she filed her application for supplemental security income. (R. at 15.) On both applications, she alleged that she had been disabled since November 10, 2016. (*Id.*) Plaintiff's applications were denied initially and upon reconsideration. (*Id.*) Plaintiff sought a *de*

*novo* hearing before an administrative law judge ("ALJ"). (*Id*.) ALJ Ronald Herman held a hearing on January 9, 2019, at which Plaintiff, represented by counsel, appeared and testified. (R. at 32-49.) On February 28, 2019, ALJ Herman issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 12-31.) On April 28, 2020, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-6.) Plaintiff then timely commenced the instant action.

## II. RELEVANT HEARING TESTIMONY

Plaintiff testified that she last worked for School Days on November 10, 2016. (R. at 35.) She has been going to the Recovery Center since she was released from rehab for alcoholism. (*Id*.) At the time of the hearing, Plaintiff had been clean for nearly three years. (*Id*.) When asked by the ALJ to explain why she could not work, Plaintiff stated that she did not know where to begin and that she had been fired from every job she had ever had. (*Id*.) Plaintiff further described that she had several "physical episodes" where she threw staplers at other employees or could not complete her tasks because she was scatter-brained. (R. at 35-36.) According to Plaintiff, it is her anger or rage that keeps her from working now. (R. at 36.) In response to the ALJ's questions focused solely on her mental limitations, Plaintiff stated that she has "mental disabilities" with her head injuries and implant. (*Id*.) She recounted that she "get(s) out of order" with her numbers and letters. (*Id*.) In response to the ALJ's questions regarding her physical limitations, Plaintiff stated that, because she has been in car wrecks and her legs have been broken so many times, she has a limp. (R. at 37.) When asked by the ALJ whether she required a cane, she confirmed that she did not. (*Id*.) In response to the ALJ's inquiry regarding her ability to do a sit-down job, Plaintiff stated that she would get out of order. (*Id.*)

In response to questions from her counsel, Plaintiff stated that she does not enjoy life and does not like crowds. (R. at 38.) She explained that she chooses to isolate and that, to the extent she takes medication for her mental health issues, it merely helps her get a little bit of sleep and minimizes her homicidal or suicidal thoughts. (*Id.*) Plaintiff testified that her mental health issues can keep her from showering or brushing her teeth or can cause her to binge eat or not eat at all. (R. at 38-39.) According to Plaintiff, she suffers mood swings and treats at New Horizons for her mental and emotional problems. (R. at 39.) She stated that she has trouble sleeping because when she closes her eyes she sees the car crashes or hammer. (R. at 40.) When questioned by the ALJ regarding her multiple incarcerations, Plaintiff confirmed that she had been incarcerated for drinking, assaults, or domestic violence. (*Id.*) In response to her attorney's questions regarding post-traumatic stress disorder, Plaintiff stated that it impacts her ability to do things like eat around others because she has been called fat. (*Id.*) She does not like to go grocery shopping and she receives meals on wheels. (*Id.*)

When questioned again by the ALJ, Plaintiff stated that she no longer has a fiancé and could lift a gallon of milk. (R. at 41.) Plaintiff testified that she lives with her older parent and has no hobbies. (*Id.*) She explained that, on a typical day, she would clean, watch TV, or go online. (*Id.*)

Plaintiff also testified that she does not drive and does not have a license because of multiple DUI's and child support arrearages. (R. at 42.) Further, Plaintiff recounted that she had been kicked out of Catholic school, had to attend public school, and had flunked her first year there due to all the issues she described and her fear of many things like men, heights, or failure. (*Id.*)

### III. RELEVANT MEDICAL RECORDS

#### A. Richard Sexton, PhD

Plaintiff was seen by Dr. Sexton on March 18, 2017, for a psychological consultation. (R. at 309-316.) He completed a functional assessment, indicating as follows. With respect to Plaintiff's abilities/limitations in understanding, remembering and carrying out instructions, he opined that Plaintiff's intellectual functioning was in the average range and she would be able to understand and apply instructions in a work setting consistent with this level. (R. at 315.) With respect to her abilities/limitations in maintaining attention/concentration and in maintaining persistence/pace to perform simple/multi-step tasks, he stated that Plaintiff "demonstrated slight difficulty with attention/concentration and task focus in performing simple and multi-step tasks." (*Id*.) He noted that she acknowledged problems maintaining attention/concentration and persistence and pace when she was working but stated that she tracked the flow of conversation adequately and did not show distraction. (*Id.*) Further, he indicated that, despite her subjective sense of reduced effectiveness, objective changes at a level prompting performance concerns are not to be expected. (*Id*.) As for her abilities/limitations in responding appropriately to supervisors and co-workers a work setting, Dr. Sexton noted that Plaintiff "established a workable relationship with the examiner" during the evaluation but that "some limitations in her ability to conform to social expectations in a work setting" were found. (R. at 315-316.) When assessing Plaintiff's abilities/limitations in responding appropriately to work pressures in a work setting, Dr. Sexton stated that "[s]he is expected to have difficulty responding appropriately to work place pressures." (R. at 316.)

#### B. Reviewing Psychologists

Kristen Haskins, Psy.D. and Audrey Todd, Ph.D. offered the following assessments in April and June 2017, respectively. They recognized that Plaintiff had understanding and memory limitations but concluded that she was not significantly limited in her ability to understand and remember detailed instructions. (R. at 57, 85.) Further, they concluded that Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. at 58, 86.) As a result, they concluded that Plaintiff was capable of completing short cycle tasks in a setting that does not have a fast pace demand. (*Id*.) They also noted that Plaintiff was moderately limited in her ability to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (*Id*.) Accordingly, they concluded that Plaintiff was capable of superficially and occasionally interacting with others. (R. at 59, 87.) With respect to Plaintiff's adaptation limitations, they found that she was moderately limited in her ability to respond appropriately to changes in the work setting. (*Id*.) Given this limitation, they concluded that Plaintiff is capable of working in an environment where changes are infrequent and explained ahead of time to allow for adjustment and that her ability to handle stress and pressure in the work place would be reduced but she would be able to handle tasks without strict time limitations or production standards. (*Id*.)

### C. Additional Psychological Treatment Records

The record also contains Plaintiff's inpatient treatment records from November 2016 through March 2017 from Mended Reeds Mental Health where she received treatment for

alcohol abuse and other mental health symptoms.  (R. 339 – 451; 613-647.)  On May 22, 2017,

Kevin Lambert, described by Plaintiff as a Nurse Practitioner  at Mended Reeds, completed a

mental status questionnaire describing Plaintiff's ability to remember, understand, and follow

directions as "adequate, her ability to maintain attention as "poor," and her ability to sustain

concentration, persist at tasks, and complete them in a timely fashion as "poor."  (R. at 340.)

Plaintiff also received treatment at New Horizons Mental Health Services (R. at 321-338; 452-

580; 652-662) and The Recovery Center (R. at 318-321; 590-612; 663-672.)  These additional

records will be discussed as necessary below in light of the issues as raised by Plaintiff.

## IV.    ADMINISTRATIVE DECISION

On February 6, 2019, the ALJ issued his decision.  (R. at 12-31.)  At step one of the

sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially

gainful activity since her alleged onset date of November 10, 2016.  (R. at 17.)

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

     1.     Is the claimant engaged in substantial gainful activity?
     2.     Does the claimant suffer from one or more severe impairments?
     3.     Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
     4.     Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
     5.     Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At step two, the ALJ concluded that Plaintiff had the following severe impairments: major depressive order; mood disorder, not otherwise specified; right shoulder impingement syndrome; and alcohol use disorder, in remission. (R. at 17.)

At step three of the sequential process, the ALJ concluded that that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18.) At step four, the ALJ assessed Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can occasionally, bend, stop, kneel, crouch, and crawl. She can perform unskilled work, and can have occasional contact with coworkers, supervisors, and members of the public. She can perform simple, routine, and repetitive tasks in a work environment with no fast-paced production requirements, with only simple work-related decisions, and few, if any workplace changes. She can have no exposure to workplace hazards such as unprotected heights and dangerous machinery.

(R. at 20.)

In reaching this determination, the ALJ accorded significant weight to the opinions of Dr. Sexton and the State agency consultants Haskins and Todd. (R. at 21-24.)

Relying on the VE's testimony and the totality of the evidence, and considering the Plaintiff's age, education, work experience, and residual functional capacity, the ALJ determined that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy as of the alleged onset date of disability. (R. at 25.) The VE testified that representative jobs included sorter, assembler, and inspector. (*Id*.) Accordingly, the ALJ determined that Plaintiff was not disabled under the Social Security Act. (*Id*.)

# V.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.    ANALYSIS

Plaintiff sets forth three assignments of error:  (1) the ALJ's residual functional capacity determination is not supported by the evidence of the record**;** (2) the ALJ failed to recognize and consider her post traumatic stress disorder or generalized anxiety disorder as medically determinable impairments**; and**  (3) the ALJ failed to properly evaluate her impairments under medical listing 12.08.  The Undersigned considers each issue in turn.

### A.  RFC

Plaintiff contends that, in formulating the RFC, the ALJ did not adequately address her continued problems with concentration, persistence, pace, and potential time off task.  The Undersigned disagrees and finds that the ALJ's RFC determination is supported by substantial evidence.

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). When considering the medical evidence and calculating the RFC, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in functional terms") (internal quotations omitted).

An ALJ must explain how the evidence supports the limitations that he or she sets forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8p, 1996 WL 374184, at *7 (internal footnote omitted).

Plaintiff argues that the ALJ's RFC determination "does not accurately and fully convey her limitations in concentration, persistence, or pace." (ECF No. 9, at 7.) Specifically, Plaintiff asserts that the RFC fails to acknowledge that she "may be unable to stay alert, or work at a consistent pace, even at a simple, unskilled, routine job, especially when placed under workplace stress and pressure." (*Id.*) Further, Plaintiff takes issue with the hypothetical question presented to the VE, asserting that it "is not adequate on the issues of concentration, persistence and pace for this Court to have any idea as to the number of jobs identified by the vocational expert that would be excluded if the claimant required repetition of directions, only visual demonstration directions, difficulty responding appropriately to work pressure or other aspects related to moderate concentration limitations were added to the hypothetical question." (*Id.* at 7.)

The determination of a plaintiff's RFC is entirely within the purview of the ALJ, and "this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Here, the ALJ did not ignore Plaintiff's difficulties with concentration, persistence, or pace. In his RFC determination, the ALJ specifically noted that Plaintiff was

capable of "unskilled work which is simple, routine, and repetitive in nature, and which involves no fast-paced production requirements, only simple work-related decisions, and few, if any, workplace changes." (R. at 24.) Indeed, the ALJ carefully considered the evidence in the record regarding Plaintiff's limitations in concentration, persistence, and pace. To this end, the ALJ set forth the following:

> In March 2017, the claimant underwent a psychological consultative examination. The claimant mentioned a history of childhood sexual abuse, but did not elaborate, she also mentioned a history of psychiatric problems among her immediate family members. The claimant stated that she first received a diagnosis of bipolar disorder at age thirteen, and had received inpatient psychiatric treatment on severl occasions. The claimant also stated that she maintained her own schedule of appointments and arranged for transportation. The claimant stated that her prior alcohol and drug use had permeated all aspects of her work, such as attendance, on the job sobriety, and failing drug screens. The claimant described problems getting along with coworkers, and stated that she could comprehend work tasks, but lacked the concentration and focus to complete them, and had a difficult time coping with workplace pressures. The claimant stated that her current medications consisted of the anti-depressant Paxil and the anti-psychotic Seroquel. She admitted to a history of suicidal ideation and five attempts. At the examination, the claimant had no disorganized behavior or signs of alcohol or drug use. She was cooperative with the examiner, Richard Sexton, Ph.D., and displayed no eccentric behaviors or impulsivity. She showed signs of depression and anxiety. The claimant had a depressed mood, appropriate affect, and was free of psychomotor agitation. She reported crying spells and feelings of guilt, hopelessness, helplessness, and worthlessness. She indicated she experienced frequent mood swings. She described her anxiety as moderate, and stated that she experienced monthly panic attacks. The claimant was able to perform calculations, had an adequate fund of knowledge, interpreted proverbs, and had an intact memory. The claimant also had intact judgment. He diagnosed an unspecified depressive order and unspecified anxiety disorder. With respect to the claimant's functional abilities, Dr. Sexton opined that the claimant would be able to understand and apply instructions in the work setting consistent with average intellectual functioning, would be able to maintain concentration and pace in a satisfactory manner, would have some difficulty conforming to workplace social expectations and would have difficulty responding appropriately to workplace pressures (1F). The undersigned gives this opinion significant weight, as it is consistent with the results of Dr. Sexton's examination, and with the claimant's treatment history in general.

...

> In addition, there are two opinions from State agency consultants. Psychological consultant Kristen Haskins, Psy.D. opined at the initial level in April 2017 that the

claimant could understand and apply simple and detailed instructions; the she could complete short cycle tasks in a setting that does not have fast paced demand; that she could handle occasional, superficial interaction with others, and that she could work in an environment with infrequent changes explained ahead of time to allow for adjustment, and could handle tasks without strict time limits or production standards. (1A, pp. 8-10). Upon reconsideration in June 2017, psychological consultant Audrey Todd, Ph.D., agreed with Dr. Haskins's assessment (5A). The undersigned gives significant weight to these opinions, as they are consistent with the claimant's consultative examination and her mental health treatment records, which demonstrate severe symptoms gradually brought under good control via close medical management.

(R. at 22; 23-24.)

In support of this contention of error, Plaintiff cites only to *Schalk v. Comm'r of Soc. Sec.*, No. 10-13894, 2011 WL 4406824, at *11 (E.D. Mich. August 30, 2011), *report and recommendation adopted*, No. 10-13894, 2011 WL 4406332 (E.D. Mich. Sept. 22, 2011). (ECF No. 9, at 7.) Plaintiff cites to this case in support of the assertion that "[w]hile,'there is no bright-line rule' as to how an ALJ should incorporate moderate concentration, persistence, and pace limitations into her hypothetical questions to the vocational expert and, ultimately, the RFC, the Court does require that the RFC be supported by substantial evidence[.]" (*Id.*) However, that is not precisely what *Schalk* holds.

Instead, the court in *Schalk* found that "there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of 'unskilled work' but excludes a moderate limitation in concentration. Rather, this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's RFC." 2011 WL 4406824, at *11. In the instant case, the ALJ's RFC determination included a limitation of unskilled work. (R. at 20.) It also included a limitation to "simple, routine, and repetitive tasks in a work environment with no fast-paced production requirements, with only simple work-related decisions, and few, if any, workplace changes." (*Id.*) While "[t]here may be cases where such moderate limitations

preclude the performance of even some simple, unskilled tasks[, plaintiff does not] explain why the facts of this particular case require a more detailed hypothetical question to adequately account for [her] own moderate limitations in concentration, persistence, or pace." *Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010). Plaintiff in the instant case also fails to explain why the facts of her case require a more detailed hypothetical question. Rather, Plaintiff simply points to evidence in the record that she believes demonstrates her limitations in concentration, persistence, and pace. (ECF No. 9, at 7, citing symptoms.) Beyond this, Plaintiff cites speculative limitations that she believes should have been included in the RFC. *See* ECF No. 9 at 7 ("This RFC determination fails to acknowledge that [Plaintiff] *may* be unable to stay alert, or work at a consistent pace.") (emphasis added). She further speculates that identified jobs could have been excluded "if [she] required repetition of directions" or "only visual demonstrations." (*Id.*)

Here, as evident from the excerpt above, the ALJ properly evaluated the record and provided sufficient explanation based on substantial evidence, specifically the opinions offered by Dr. Sexton and the reviewing psychological consultants. Plaintiff has offered nothing to challenge these opinions beyond record citations to particular symptoms. Moreover, even if Plaintiff's listing of symptoms was sufficient evidence to support a conclusion opposite that reached by the ALJ, it would not be enough here. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) ("If substantial evidence supports the commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion."). Accordingly, the Undersigned finds that, reviewing the record as a whole, substantial evidence demonstrates that the ALJ's RFC adequately accounted

for all of the limitations he found credible. It is therefore **RECOMMENDED** that Plaintiff's

contention of error based on the ALJ's RFC determination be **OVERRULED**.

### B. MEDICALLY DETERMINABLE IMPAIRMENTS

Plaintiff next contends that the ALJ erred when he failed to recognize and thus

consider Plaintiff's traumatic stress disorder or generalized anxiety disorder as medically

determinable impairments. (ECF No. 9 at 8-10.) By extension, Plaintiff argues that the ALJ

gave no consideration to the impact these impairments would have on her RFC. (*Id*. at 8.)

Plaintiff's argument is not well taken. The ALJ is required to consider all objective

medical evidence in the record where such evidence is produced by an acceptable medical

source. 20 C.F.R. § 404.1512(b); 20 C.F.R. § 404.1513; *Minor v. Comm'r of Soc. Sec.*, No. 12-

1268, 2013 WL 264348, *16 (6th Cir. Jan. 24, 2013).

In addition, in formulating an RFC, the ALJ is required to consider "all the relevant

medical and other evidence in [the] case record," including evidence of impairments that are not

considered to be "severe" at step two of the sequential evaluation process. 20 C.F.R. §

404.1520(e); 20 C.F.R. § 404.1545(a); *see also Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574,

577 (6th Cir. 2009) (quoting Soc. Sec. Rul. 96-8p, 1996 WL 374184 at *5 (1996)) ("After an

ALJ makes a finding of severity as to even one impairment, the ALJ 'must consider limitations

and restrictions imposed by *all* of an individual's impairments, even those that are not 'severe.'

") (emphasis in original). A failure of the ALJ to consider all of a claimant's records or

symptoms in developing an RFC generally constitutes reversible error. *Cf. Malone v. Comm'r of*

*Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) (finding no reversible error in the RFC

determination "because the ALJ considered all of the symptoms that were consistent with the

medical evidence in determining his residual functional capacity"); *see also Wilson v. Comm'r of*

14

*Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (concluding that reversal is required where the agency fails to follow its own procedural regulations where the regulation is intended to protect claimants). Further, "[i]t is an elemental principle of administrative law that agencies are bound to follow their own regulations." *Wilson*, 378 F.3d at 545. Even if the aggrieved party appears to have little chance of success on the merits, courts generally will not find the procedural error to be harmless. *Id.* at 546. "To hold otherwise . . .would afford the Commissioner the ability to violate the regulations with impunity and render the protections promised therein illusory." *Id.*

Further, at step two of the sequential evaluation, a plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 534 (6th Cir. 2001). A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). "Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation." *Hobbs v. Comm'r of Soc. Sec.*, No. 1:14-cv-121, 2015 WL 4247160, at *5 (W.D. Mich. July 13, 2015) (citing *Maziarz v. Secretary of Health & Human Services,* 837 F.2d 240, 244 (6th Cir. 1987)). "Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error." *Hobbs*, 2015 WL 4247160 at *5 (citing *Maziarz,* 837 F.2d at 244). An ALJ can consider non-severe impairments in determining the RFC. *Id.* "The fact that some of [the claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v. Astrue,* 266 F. App'x 451, 457 (6th Cir. 2008).

Here, the ALJ found that Plaintiff had severe impairments of major depressive order; mood disorder, not otherwise specified; right shoulder impingement syndrome; and alcohol use

disorder, in remission. (R. at 17.) While the ALJ did not specifically classify traumatic stress disorder or generalized anxiety disorder as severe or non-severe impairments, the ALJ nevertheless went on to consider Plaintiff's allegations of mental health conditions in his discussion and at the remaining steps of the disability determination, including when assessing Plaintiff's functional limitations. (R. at 21-24.) Accordingly, the ALJ's failure to include traumatic stress disorder or generalized anxiety disorder as additional severe impairments at step two is legally irrelevant. *Anthony,* 266 F. App'x at 457; *Maziarz,* 837 F.2d at 244. Even if the ALJ erred by failing to find these conditions medically determinable impairments, the error is harmless. In addition to the reasons above, references to these conditions in the record simply reflect either a diagnosis of PTSD (*see, e.g.*, R. at 411, 434) or a general reference to anxiety or an anxiety disorder (*see, e.g.*, R. at 312, 314, 501, 551, 699). For the reasons previously discussed, however, assuming such diagnoses, the "mere diagnosis" of these conditions says nothing about their severity. *Higgs*, 880 F.2d at 863; *see also Malicoat*, 2019 WL 1305861, at *1; *Robinson*, 2019 WL 342432, at *10. If the Court remanded the case and the ALJ resolved this issue in Plaintiff's favor by finding that these conditions were medically determinable but non-severe impairments,

> which is the best result Plaintiff could hope for were the case to be remanded—the key question would then be "whether the ALJ's decision not to find any limitations arising from the condition in question is supported by substantial evidence." *See Rose v. Comm'r of Soc. Sec.*, 2015 WL 6735313, at *5 (S.D. Ohio Nov. 4, 2015), *adopted and affirmed*, 2015 WL 7779300 (S.D. Ohio Dec. 2, 2015). Where, as here, Plaintiff identifies no such limitations, and it is not apparent that any exist, the error made by the ALJ is harmless. It would certainly be better practice were an ALJ to say explicitly which impairments are found to be non-severe and which are found not to be medically determinable, but ordering a remand for clarification of that question when the ALJ's residual functional capacity finding would not change would be an exercise in futility.

*Rouse v. Comm'r of Soc. Sec.*, No. 2:15-cv-0223, 2017 WL 163384, at *4–5 (S.D. Ohio Jan. 17, 2017), *report and recommendation adopted*, No. 2:16-cv-0223, 2017 WL 1102684 (S.D. Ohio March 24, 2017) (finding that even though error had occurred it did not justify a remand).

It is therefore **RECOMMENDED** that Plaintiff's second contention of error be **OVERRULED**.

### C. Listing 12.08

Plaintiff contends that the ALJ "failed to properly evaluate [her] impairments under Medical Listing 12.08 and, as a result, the decision is not supported by the facts, the law, or substantial evidence." (ECF No. 9 at 10-14.) The Undersigned disagrees and finds that substantial evidence supports the ALJ's conclusion as to the applicability of Listing 12.08.

A plaintiff's impairment must meet every element of a Listing before the Commissioner may conclude that he or she is disabled at step three of the sequential evaluation process. *See* 20 C.F.R. § 404.1520; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986). The plaintiff has the burden to prove that all of the elements are satisfied. *King v. Sec'y of Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir. 1984). The regulations provide that in making a medical equivalence determination, the Social Security Administration will "consider the opinion given by one or more medical or psychological consultants designated by the Commissioner." 20 C.F.R. § 404.1526(c). Nevertheless, "[t]he burden of providing a . . . record . . . complete and detailed enough to enable the Secretary to make a disability determination rests with the [plaintiff]." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 363, 367 (6th Cir. 1989) (Commissioner's decision denying benefits affirmed where medical evidence "almost establishes a disability" under Listing).

The Listing of Impairments "describes impairments the SSA considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Frost v. Comm'r of Soc. Sec.,* No. 3:18-CV-70, 2019 WL 5304056, at *2 (S.D. Ohio Oct. 21, 2019), *report and recommendation adopted*, No. 3:18-CV-70, 2020 WL 33116 (S.D. Ohio Jan. 2, 2020) (quoting *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009) (citing 20 C.F.R. § 404.1525(a)) (internal quotations omitted). An ALJ is not required to 'address every listing' or to 'discuss listings that the applicant clearly does not meet.'" *Id*. (quoting *Smith–Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (citations omitted)). However, if the record evidence raises a "substantial question" regarding whether a plaintiff meets a listing, an ALJ's failure to discuss the relevant listing constitutes reversible error. *Id.* (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011)). "To meet this standard, the 'claimant must point to specific evidence that demonstrates he [or she] reasonably could meet or equal every requirement of the listing.'" *Id.* (quoting *Smith–Johnson*, 579 F. App'x at 432 (citations omitted)).

The ALJ did not consider the applicability of Listing 12.08. However, in order to meet Listing 12.08, Plaintiff is required to demonstrate not just that she meets the "A" criteria, but that she meets the "B" criteria as well. 20 C.F.R. 404, Subpt. P, App. 1, Listing 12.08. The ALJ evaluated Plaintiff's impairments under Listings 12.04 and 12.06, both of which contain "paragraph B" criteria identical to those provided by Listing 12.08. Specifically, in order to satisfy the "B" criteria of any of these listings, Plaintiff must demonstrate:

> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>
> > 1. Understand, remember, or apply information.
> > 2. Interact with others.
> > 3. Concentrate, persist, or maintain pace.

4. Adapt or manage oneself.

20 CFR Part 404, Subpart P, Appendix 1.

The ALJ determined that Plaintiff's impairments did not meet the "paragraph B" criteria because Plaintiff had only moderate limitations in her ability to understand, remember, or apply information (R. at 18); moderate limitations in her ability to interact with others (R. at 19); moderate limitations in her ability to concentrate, persist or maintain pace (*Id.*); and moderate limitations in her ability to adapt or manage oneself. (*Id.*) In refuting the ALJ's analysis of the "B" criteria, Plaintiff contends that "the record consistently documents [her] marked limitations in interacting with others and concentrating, persisting, or maintain pace." The Undersigned disagrees.

The ALJ's conclusion as to the relevant criteria is supported by substantial evidence. For example, on the issue of Plaintiff's interaction with others, the ALJ noted Plaintiff's allegations that "she has difficulty engaging in social activities, getting along with others, dealing appropriately with authority, controlling her anger, and spending time in crowds. (R. at 19.) He countered that, however, with Plaintiff's statements that she is able to live with others (*Id.* citing R. at 452-580 ) and, importantly, the state agency consultants' opinions that Plaintiff would be only moderately limited with respect to interacting appropriately with the public, accepting instructions and criticism from supervisors, and getting along with coworkers. (*Id*. citing R. at 50-62.) Finally, the ALJ noted that the medical evidence demonstrated Plaintiff 's abilities to interact well and appear comfortable during appointments." (*Id.* citing R. at 309-316; 452-580.) The ALJ's discussion on this point is consistent with Dr. Sexton's observation that "[Plaintiff] established a workable relationship with the examiner, and was cooperative with procedures presented to her" and that "[s]he worked effectively with the examiner." (R. at 312.) Further,

the ALJ's conclusion regarding Plaintiff's conduct during appointments is borne out by a review of office treatment records from New Horizons dated between December 29, 2017 and September 25, 2018. Those records describe Plaintiff's mood as euthymic (R. at 481, 509, 524, 545, 552, 559, 573); her appearance as normal (R. at 466, 473, 480, 487, 494, 501, 508, 516, 522, 537, 544, 551, 558, 572); her thought process and content as normal (R. at 474, 481, 488, 495, 502, 509, 516, 524, 538, 545, 552, 559, 573); her orientation/attention-concentration as normal (R. at 467, 474, 481, 488, 495, 502-503, 509, 516, 524, 538, 545, 552, 559, 573); and her judgment as good (R. at 467, 475, 482, 489, 496, 503, 517, 525, 546, 553, 560, 574).

On the issue of Plaintiff's ability to concentrate, persist or maintain pace, the ALJ noted Plaintiff's contention that she has limitations in this area with respect to generally focusing or concentrating, following instructions, completing tasks, and maintaining a regular work schedule. At the same time, however, he noted that Plaintiff was able to prepare meals, handle her own medical care, and that the state agency consultants opined that Plaintiff would be only moderately limited with respect to maintaining attention and concentration for extended periods. (R. at 19 citing R. at 58). The ALJ also cited to Dr. Sexton's functional assessment, noting that nothing in that report indicated Plaintiff's inability to complete testing to assess her concentration and attention abilities. (*Id.* citing R. at 315.)

Plaintiff does not seriously challenge the ALJ's analysis other than to again cite to different symptoms that she contends are both well documented in the record and indicative of her marked limitations in these areas. Beyond this, Plaintiff argues, relying in part on *Reynolds v. Comm'r,* 424 F. App'x 416 (6th Cir. 2011), that the ALJ's failure to evaluate her impairments under Listing 12.08 mandates remand in this case. Her panoply of arguments on this issue, however, are all wholly lacking in merit. At bottom, Plaintiff appears to be arguing that

substantial evidence exists to support a finding different than that reached by the ALJ here. However, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley,* 581 F.3d at 406.

For all of these reasons, the ALJ's determination not to evaluate Plaintiff's limitations under Listing 12.08 can only be considered, at most, a harmless error. *See Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654–55 (6th Cir. 2009) ("[W]e review decisions of administrative agencies for harmless error.")  Accordingly, it is **RECOMMENDED** that Plaintiff's third contention of error be **OVERRULED**.

## VII.   CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Based on the foregoing, it is therefore **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and

waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted).

DATED: June 1, 2021

/s/ *Elizabeth A. Preston Deavers*
**ELIZABETH A. PRESTON DEAVERS**
**UNITED STATES MAGISTRATE JUDGE**